UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA R., <br><br>　　　　　Plaintiff, <br><br>　　　v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br>　　　　　Defendant. | Case No.  ED CV 19-920-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On May 16, 2019, plaintiff Cynthia R. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB").  The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of a nurse practitioner; and (2) whether the ALJ properly rejected plaintiff's subjective

symptom testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-13; *see* Defendant's Brief ("D. Mem.") at 3-7.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly consider the opinion of plaintiff's nurse practitioner, and the ALJ erred in rejecting plaintiff's subjective symptom testimony. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 36 years old on the alleged disability onset date, is a high school graduate. AR at 73, 98. Plaintiff has past relevant work experience as a stock clerk. *Id.* at 87.

On January 8, 2015, plaintiff filed an application for DIB, alleging an onset date of April 22, 2014 due to lupus, scleroderma, and rheumatoid arthritis. *Id*. at 98. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 118-129.

On May 4, 2017, plaintiff appeared and testified at a hearing before the ALJ. *Id.* at 49-97. The ALJ also heard testimony from David Rinehart, a vocational expert. *Id.* at 86-92. On January 11, 2018, plaintiff appeared and testified at a supplemental hearing before the ALJ. *Id.* at 27-48. The ALJ also heard testimony from Dr. Joseph Gaeta, a medical expert. *Id.* at 34-43. On April 30, 2018, the ALJ denied plaintiff's claim for benefits. *Id.* at 10-21.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since April 22, 2014, the alleged onset date. *Id*. at 13.

At step two, the ALJ found plaintiff suffered from the following severe impairments: connective tissue disorder, rheumatoid arthritis (with positive antinuclear antibodies (ANA) test), scleroderma, degenerative disc disease of the lumbar spine, lordotic straightening of the spine and spondylosis, osteoarthritis of the left knee, and right knee meniscus degeneration and strain. *Id.* at 13.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 17.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform a wide range of light work, with the limitations that she: could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; could stand or walk up to six hours in an eight-hour workday; could sit up to six hours in an eight-hour workday; could push or pull bilaterally with her upper extremities on a frequent basis; could handle, finger, or feel bilaterally on a frequent basis; could not climb ropes, ladders, or scaffolds; could perform positional tasks such as stooping, crouching, crawling, kneeling, balancing, and climbing stairs or ramps on an occasional basis; and must avoid concentrated exposure to extremes of cold, and common workplace hazards such as unprotected heights, open flames, or fast or dangerous machinery. *Id.* at 17.

The ALJ found, at step four, that plaintiff was unable to perform any past relevant work. *Id.* at 19.

At step five, the ALJ found – based on plaintiff's age, education, work

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

experience, and RFC – there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including garment sorter, office helper, and small products assembler. *Id.* at 20. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 21.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

4

affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Did Not Properly Consider NP Allen's Opinion

Plaintiff argues the ALJ erred by rejecting the opinion of Shannon Allen, a nurse practitioner. P. Mem. at 4-8. Specifically, plaintiff argues the ALJ did not provide a germane reason for rejecting NP Allen's opinion when formulating plaintiff's RFC determination, even though NP Allen had an extensive and long-standing treating relationship with plaintiff. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ must also consider evidence from those who are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). An ALJ may only reject the opinion of a non-acceptable medical source by providing a germane reason. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

### 1. NP Shannon Allen

Plaintiff received treatment from NP Shannon Allen at Hemet Family Care Center from approximately March 2016 through at least September 2017. *See* AR at 631-38, 646-47, 650-53, 656-98, 702-05, 752-54, 817. Over the course of treating plaintiff, NP Allen diagnosed plaintiff with a variety of conditions, including obesity, iron deficiency anemia due to chronic blood loss, rheumatoid arthritis, scleroderma, chest pain at rest, uterine leiomyoma, abnormal EKG, menorrhagia with regular cycle, sleep disturbances, a need for oxygen, low blood pressure, allergic sinusitis, and a history of dizziness. *Id.*

In September 2017, NP Allen submitted a reference letter on behalf of plaintiff stating that plaintiff had been diagnosed with rheumatoid arthritis, scleroderma, chronic anemia, and lupus. *Id.* at 817. NP Allen opined that plaintiff was unable to work because of these chronic conditions, which cause symptoms such as joint pain, fatigue, fever, chronic chest pain at rest, and generalized weakness. *Id.*

### 2. Other Opinions Regarding Plaintiff's RFC

Dr. Vicente Bernabe, a consultative examiner, examined plaintiff on April 15, 2015. *Id.* at 343-49. Dr. Bernabe opined that plaintiff had degenerative disc disease of the lumbar spine and medial osteoarthritis of the left knee, but that plaintiff could essentially perform a full range of medium level work. *Id.* Dr. Joseph Gaeta, a medical expert witness, testified at a supplemental hearing that the

medical record established arthritis but not lupus, and there was nothing in the record to substantiate plaintiff's need for home oxygen. *Id.* at 34-43. Dr. Gaeta opined that plaintiff is capable of: lifting, carrying, and pulling 50 or 20 pounds occasionally and 10 pounds frequently; sitting for six hours; standing and walking for six hours; and crouching, bending, and crawling but not kneeling. *Id.* at 42-43. Dr. Gaeta further opined that no lung disease was established, but if it were, plaintiff would need to avoid concentrated exposure to pulmonary irritants and temperature extremes. *Id*. at 43.

State Agency physicians Dr. R. Jacobs and Dr. E. Cooper opined that plaintiff had severe inflammatory arthritis and severe degenerative disc disease, but did not address plaintiff's scleroderma. *Id.* at 98-116. These physicians opined that plaintiff could perform a wide range of medium-level tasks with some positional and environmental restrictions. *Id.*

Plaintiff was treated by doctors in the Riverside County Health System, Inland Eye Specialists, Hemet Heart Medical Center, Southland Arthritis, Hemet Valley Medical Center, Arrowhead Orthopedics, Southland Hematology/Oncology, and Charter Health Care Group for various conditions. *Id.* at 293-816. Plaintiff was diagnosed with conditions including scleroderma, spondylosis, osteoarthritis of the left knee, degenerative disc disease of the thoracic spine, bilateral trochanteric bursitis, right bicep tendonitis, anemia, and moderate to severe canal stenosis. *Id.* at 365-429, 473-522, 604-12. These doctors did not opine on plaintiff's RFC. *Id.*

### 3. The ALJ's Findings

The ALJ determined plaintiff had the RFC to perform a wide range of light work, with the limitations that she: could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; could stand or walk up to six hours in an eight-hour workday; could sit up to six hours in an eight-hour workday; could

push or pull bilaterally with her upper extremities on a frequent basis; could handle, finger, or feel bilaterally on a frequent basis; could not climb ropes, ladders, or scaffolds; could perform positional tasks such as stooping, crouching, crawling, kneeling, balancing, and climbing stairs or ramps on an occasional basis; and must avoid concentrated exposure to extremes of cold, and common workplace hazards such as unprotected heights, open flames, or fast or dangerous machinery. *Id.* at 17.

In reaching his RFC determination, the ALJ gave some but not great weight to Dr. Bernabe's opinion that plaintiff has degenerative disc disease and medial osteoarthritis of the left knee, in that the ALJ found plaintiff better suited to light rather than medium work. *Id*. at 14. The ALJ gave partial but not great weight to Dr. Gaeta's opinion that plaintiff's treatment records did not reflect any history of lupus, but gave great weight to his opinion that plaintiff's coronary artery disease was not severe and posed no more than minimal restrictions. *Id.* at 14-16. The ALJ gave some but not significant weight to the State Agency physicians' opinions that plaintiff is capable of a wide range of medium-level tasks. *Id.* at 18. The ALJ gave no weight to NP Allen's opinion that plaintiff is disabled. *Id.* at 18-19. Plaintiff only challenges the ALJ's discounting of NP Allen's opinion.

Nurse practitioners are not acceptable medical sources.[3] *Britton*, 787 F.3d at 1013; 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Instead, a nurse practitioner is an "other source," and an ALJ only needs to cite germane reasons for discounting the opinion. *Id*.

The ALJ stated that he considered NP Allen's assessment as part of

---

[3] The Social Security Administration has issued new regulations. Although a nurse practitioner is considered an acceptable medical source under the new regulations, this case was filed prior to March 27, 2017 and, as such, the previous definition of acceptable medical sources applies. *See* 20 C.F.R. §§ 404.1502(a)(7); 416.902(a)(7) (effective March 27, 2017).

8

plaintiff's overall, longitudinal treatment record, but provided two possible reasons for rejecting NP Allen's opinion. First, NP Allen was not an acceptable medical source. *Id*. at 18-19. Second, although NP Allen opined that plaintiff is disabled, the ultimate determination of disability is reserved to the Commissioner. *Id.*

The ALJ's first possible reason for rejecting NP Allen's opinion was that her opinion cannot be given the same weight as an opinion from an acceptable medical source. *Id*. Although it is proper to give the opinions of acceptable medical sources greater weight than the opinions of non-acceptable medical sources, the opinion of a non-acceptable medical source may, depending on the facts of a particular case, be given greater weight than the opinion of an acceptable medical source. *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). The mere fact that NP Allen is a nurse practitioner was not a germane reason to reject her opinion. It does not appear, however, that the ALJ actually rejected her opinion on this basis. Rather, the ALJ correctly noted a nurse practitioner is a non-acceptable treating source, but stated he considered her assessment as part of the treatment record. This was proper.

The ALJ's second – and, in fact, only actual – reason given for rejecting NP Allen's opinion was that the ultimate determination of disability is reserved to the Commissioner. AR at 19. The ALJ correctly noted that it is within his purview, and not NP Allen's, to make the ultimate disability determination. *See* 20 C.F.R. § 404.1527(d); *see also McLeod v. Astrue*, 640 F.3d 881 (9th Cir. 2011) (a treating physician's opinion is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability). This was a proper reason to give no weight to the ultimate disability determination by NP Allen. But it is not a germane reason with respect to other aspects of NP Allen's opinion. The question is whether there were other pertinent aspects.

Defendant argues NP Allen failed to assess any specific functional

9

limitations in sitting or standing ability, or otherwise state how plaintiff's symptoms impacted her ability to function in a work setting. D. Mem. at 4. This is only partially correct. While NP Allen did not assess functional limitations, she did note that plaintiff's chronic conditions cause her significant joint pain, fatigue, fever, chest pain at rest, and generalized weakness, and require plaintiff to see doctors and other specialists several times a month. As plaintiff argues, this assessment is relevant to formulating plaintiff's RFC, and it appears the ALJ rejected it, along with the assessment that plaintiff is unable to work, without giving any reason apart from the non-germane reason that the ultimate disability determination is up to the ALJ. This was error. *See Reddick*, 157 F.3d at 725 (ALJ not bound by physicians' opinions on ultimate issue of disability, but cannot reject them without providing legally adequate reason) (citations omitted).

In sum, the ALJ failed to provide a germane reason to reject NP Allen's opinion as a whole. As such, the ALJ erred in discounting the opinion.

**B.**     **The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints**

Plaintiff also argues the ALJ improperly found her testimony regarding her symptoms to be less than fully credible on the grounds that it was not supported by the objective medical evidence and her stated activities of daily living. P. Mem. at 8-13. Plaintiff argues the ALJ failed to articulate clear and convincing reasons to discount the credibility of her testimony. *Id.*

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 18. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. Here, the ALJ discounted plaintiff's subjective complaints because: (1) the objective medical evidence did not support plaintiff's allegations as to the intensity, persistence, and limiting effects of her symptoms; and (2) plaintiff's activities of daily living are consistent with a finding that she is capable of a wide range of sedentary tasks. *Id.* at 18-19.

At the May 4, 2017 hearing, plaintiff testified that she has heart problems, experiences pain in her hands, finds it difficult to walk long distances, cannot lift heavy objects or sit for long, and experiences shortness of breath. *Id*. at 76-81. Plaintiff also stated at an orthopedic consultation that she injured her back and left knee due to repetitive bending at work, and she experiences "sharp, throbbing and burning" back and left knee pain that is exacerbated by prolonged sitting, standing, walking, bending, and lifting. *Id.* at 344. Although the ALJ notes that plaintiff states she cannot be in the heat because of her lupus and experiences nausea and

11

vomiting (*see id.* at 18), it is unclear when plaintiff made these statements, as they do not appear in either of the hearing transcripts or in her consultation notes.

As for plaintiff's activities of daily living, plaintiff stated at the May 4, 2017 hearing that she spends the majority of her time taking care of her four children as a single mother. *Id.* at 69-70, 81-85. Plaintiff is assisted by a caregiver who is paid for by the In-Home Supportive Services Program, a social services program funded by the state of California. *Id.* at 70-72. Plaintiff described a typical day for her as getting up, getting her children ready for school, trying to clean the house with the assistance of her caretaker, and helping her children with homework after school. *Id.* at 81-85. Plaintiff stated that she also went grocery shopping with her caretaker and would watch her son at football practice. *Id.* at 83.

The ALJ found plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms not entirely credible. *Id.* at 18. The first reason he provided was that the objective medical evidence did not support her symptom testimony. *Id.* The ALJ found that although plaintiff has a caretaker, plaintiff's coronary and pulmonary tests do not support the need for plaintiff having a dedicated oxygen tank. *Id.* The ALJ further found that there was no medical evidence to support plaintiff's claims of disabling lupus, rheumatoid arthritis, or scleroderma. *Id.*

As the ALJ observed at the hearings, plaintiff's medical history is fragmented, which may be due to plaintiff's decision to proceed pro se. The record includes references to plaintiff being diagnosed with lupus, rheumatoid arthritis, and scleroderma. *See, e.g. id.* at 521, 604. The record also includes several references to plaintiff using home oxygen therapy (*see id.* at 670), but it is not clear when plaintiff was prescribed oxygen or by whom. Plaintiff stated at the January 11, 2018 hearing that the Loma Linda University Hospital "sent [her] home with the oxygen." *Id.* at 39. Plaintiff also stated at the same hearing that NP Allen told

plaintiff she cannot take her off oxygen and "[i]t's up to the pulmonologist to take [her] off." *Id.* at 40. It appears plaintiff was prescribed home oxygen after reporting to the emergency room at Loma Linda University Medical Center in October 2016 with abdominal pain, flank pain, a urinary tract infection, and sepsis. *Id*. at 441-59. But no other medical records support a prescription for home oxygen. Indeed, a March 2015 record from a physician who performed a lung volume test on plaintiff included only a recommendation that they "evaluate for anemia." *Id.* at 478.

Yet, even if the ALJ's discounting of plaintiff's testimony was supported by a lack of objective medical evidence, this cannot be the sole reason for discounting her testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); s*ee also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").

The second reason the ALJ gave for discounting plaintiff's testimony was that she testified to engaging in "decent activities of daily living." *Id.* at 19. The ALJ explained that these activities included getting her children ready for school, doing light household chores, going to her children's extracurricular activities, visiting with family, and going to parent conferences. *Id*. Based on these stated activities, the ALJ found that there was no evidence showing that plaintiff would not be able to perform a wide range of sedentary-level tasks. *Id.* A claimant's ability "to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be

13

sufficient to discredit her. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ here does not explain, however, how plaintiff's claimed daily activities translate into a work setting.

Furthermore, the ALJ's recounting of plaintiff's activities is inconsistent with her hearing testimony. At the May 4, 2017 hearing, plaintiff testified that she rarely visits family. *Id.* at 84. Although the ALJ appears to characterize plaintiff as a mother of four children who is "active with the kids," plaintiff testified that many of her daily activities are only possible with the assistance of her caretaker. For instance, plaintiff testified that her caretaker is responsible for driving her children to school, doing at least some cleaning and cooking, and taking plaintiff grocery shopping. *Id.* at 81-83. Plaintiff also testified that her involvement in her son's extracurricular activities consists of her caretaker taking plaintiff to the park or a practice, and plaintiff "sit[ting] there and watch him play." *Id.* at 83. In short, plaintiff testified that she relies heavily on her caretaker to accomplish many of her daily activities.

Given plaintiff's explanation of how her caretaker assists her on a daily basis, characterizing plaintiff as a mother who is "active with the kids" is a stretch. A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). It may be that plaintiff's ability to do some of these tasks with the assistance of a caretaker shows she could perform a sedentary job, although the ALJ in fact determined plaintiff could perform a wide range of light work. But in any event, for the ALJ to discount plaintiff's testimony based on her reported daily activities, he must explain how those activities are transferable to a work setting or otherwise undercut the

14

credibility of her testimony regarding her subjective symptoms. The ALJ fails to give such an explanation, and on their face, plaintiff's reported activities do not show she is able to work.

Because plaintiff's daily activities do not clearly undercut the credibility of her symptom testimony, and lack of objective medical evidence cannot be the sole basis for discounting a plaintiff's testimony, the ALJ failed to articulate clear and convincing reasons to discount plaintiff's testimony.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a

claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to resolve two outstanding issues. On remand, the ALJ shall reconsider NP Allen's opinion, and either credit it or provide germane reasons for rejecting it. The ALJ shall also reconsider plaintiff's subjective symptom testimony, and either credit it or articulate clear and convincing reasons for discounting it. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: November 30, 2020

SHERI PYM
United States Magistrate Judge